IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES EARL BROWN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 13-CV-1166-NJR |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on Petitioner James Earl Brown's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).[1] For the reasons set forth below, the motion is denied.

## BACKGROUND

**Underlying Criminal Case**

On September 24, 1998, James Earl Brown pleaded guilty to charges of conspiracy to distribute cocaine base (Count 1), distribution of cocaine base (Count 19), and felon in possession of a firearm (Count 20). *United States v. James E. Brown*, SDIL Case No. 97-cr-30089-13, Docs. 381, 382. He was sentenced on January 12, 1999, by District Judge William Stiehl to a total of 262 months' imprisonment and five years' supervised release.

---

[1] This case was originally assigned to United States District Court Judge William D. Stiehl. Upon Judge Stiehl's retirement, the case was randomly reassigned to the undersigned District Judge on May 20, 2014 (Doc. 9).

*Id.* at Doc. 418, 421.

Brown was released from prison and began his term of supervised release on January 4, 2011. SDIL Case No. 97-cr-30089-13, *see* Doc. 909. In October 2012, Brown's probation officer filed a petition to revoke his supervised release based on numerous violations. *Id.* at Docs. 909, 924. The most substantial violations included possession of a firearm by a felon; possession of a controlled substance; and possession of a controlled substance with intent to distribute. *Id.* at Docs. 924, 976.

A revocation hearing was held on October 31, 2012, and Brown admitted to some of the violations and did not contest the others. SDIL Case No. 97-cr-30089-13, Docs. 926, 976. Judge Stiehl found Brown guilty of all the violations and ordered his supervised release be revoked. *Id.* at Doc. 926. Brown was sentenced to a total of 72 months' imprisonment. *Id.* Specifically, he was sentenced to sixty months as to Count 1, twelve months as to Count 19, and twelve months as to Count 20. *Id.* The twelve-month sentences were to run concurrent to each other and consecutive to the sixty-month sentence. *Id.*

**§ 2255 Proceedings**

Brown filed his § 2255 petition on November 3, 2013 (Doc. 1). Brown's only argument is that Dan Cronin, his attorney at the revocation hearing, provided ineffective assistance when he failed to file a notice of appeal after Brown requested that he do so (Doc. 1). Brown supported his petition with a short affidavit (Doc. 1-1). That affidavit states, in pertinent part:

> That during the revocation proceedings, of my Supervised Release, I was represented by attorney Daniel G. Cronin; That immediately following sentencing, I specifically requested attorney Cronin to appeal the sentence; That I renewed this request upon receiving a[n] October 31, 2012 Memorandum from attorney Cronin, regarding the appeal; That I fully understood that an appeal would be filed; That in late August, I learned that no appeal had been filed; I learned this fact through the Inmate Legal Law Library where I requested assistance in learning the status of my appeal; That I immediately sought assistance in the filing of [a § 2255] motion to regain my rights to appeal[.]

The Government filed a response to Brown's petition on December 17, 2013, and addressed his claim on the merits (Doc. 4). Attached to the Government's response was an affidavit from Dan Cronin, who expressly denies that Brown ever asked him to file an appeal (Doc. 4-2). Mr. Cronin's affidavit states, in pertinent part:

> I did not file a Notice of Appeal, because Mr. Brown never asked me to.
>
> Mr. Brown's claim "That immediately following sentencing, I specifically requested attorney Cronin to appeal the sentence . . ." is untrue. The minutes on Petition to Revoke Supervised Release indicate that the hearing ended at 11:15 a.m. However, later that afternoon, undersigned counsel sent Mr. Brown a two-page letter on a possible appeal. A copy of that letter, which was last modified at 3:13 p.m. on October 31, 2012, is attached to this Declaration Under Penalty of Perjury. Among other points, that letter asks Mr. Brown, "If you want me to file a Notice of Appeal on your behalf – or if you have any questions about a possible appeal – please let me know immediately."
>
> Mr. Brown's claim "that I renewed this request upon receiving a October 31, 2012 Memorandum from attorney Cronin, regarding the appeal . . . " is also untrue. To clarify, Mr. Brown received the October 31, 2012 letter sometime after November 20, 2012, because by the time the earlier letter arrived at the Clinton County Jail, Mr. Brown had been transferred to the Bureau of Prisons. Undersigned counsel was unaware of that fact until the October 31, 2012 letter was returned as undeliverable on November 19, 2012. Attached to this Declaration Under Penalty of Perjury is a letter dated November 20, 2012 from undersigned counsel to Mr. Brown, explaining this sequence of events.

> At no time did James Earl Brown ask for an appeal from his revocation case. Furthermore, at no time did Mr. Brown indicate to undersigned counsel that he thought an appeal had been filed, *e.g.*, by asking for a copy of a Notice of Appeal or appellate brief.

(Doc. 4-2, Doc. 4-3, Doc. 4-4).

Brown filed a reply brief on January 13, 2014, asserting the Court must hold an evidentiary hearing to resolve the conflict between his and Mr. Cronin's affidavits (Doc. 5). After reviewing the parties' submissions, however, the Court determined that the allegations in Brown's affidavit were too vague and conclusory to make the threshold evidentiary showing necessary to warrant an evidentiary hearing.[2] Brown was offered a chance to fill in the gaps in his allegations with specific details about his requests to Dan Cronin so that the Court could properly evaluate his allegations and determine whether a full evidentiary hearing was necessary or proper (Doc. 19).[3] The

---

[2] *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) ("[W]e also have stated that, 'it is the rule of this court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions.'" (quoting *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996))); *Galbraith v. United States,* 313 F.3d 1001, 1009 (7th Cir. 2002) ("While . . . this court requires a district court to grant an evidentiary hearing if a § 2255 petitioner alleges *facts* that, if proven would entitle him to relief, the threshold determination that the petitioner has sufficiently alleged such facts requires the petitioner to submit a sworn affidavit showing what specific *facts* support the petitioner's assertions.") (internal quotation marks and citation omitted) (emphasis added). *See also Mahaffey v. Ramos*, 588 F.3d 1142, 1144–45 (7th Cir. 2009) ("Habeas petitions must state the relief requested, specify the ground for relief, and state the facts supporting the ground for relief." (citing Rule 2(c) of the Rules Governing § 2254 Cases)).

[3] *Ryan v. United States*, 657 F.3d 604, 608 (7th Cir. 2011) ("[W]e recognize that further factual development need not involve the full panoply of discovery techniques or even a hearing. The district court could, for example, instruct Ryan to supply missing details in a supplemental affidavit or permit the government to submit an affidavit from counsel. Depending on what Ryan and/or his attorneys say, this approach might obviate the need for oral testimony or further discovery."); *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) ("The district court also has the authority to order discovery or something short of a full-blown hearing to allow an adequate inquiry into a petitioner's claim, or to help the court determine whether a full hearing is necessary."). *See also Bruce v. United States,* 256 F.3d 592, 596 (7th Cir. 2001) ("The district court ordered Mr. Bruce to supplement his motion with additional facts supporting his claim.") (footnote omitted); Rules Governing Section 2255 Proceedings for the United States District Courts 7 (authorizing

Court thought the quickest and most prudent way to get these facts from Brown was to speak to him in person, as opposed to having him file a supplemental affidavit or having him answer written interrogatories propounded by the Court (Doc. 19).

To that end, Brown appeared before the Court via video on February 14, 2017 (Docs. 25, 27). The Court first probed into Mr. Brown's assertion that he asked Dan Cronin to file an appeal "immediately following sentencing."

> *Court:* So tell me as far as immediately after the sentencing, when and where did you make the request for Mr. Cronin to file the notice of appeal?
> *Brown:* Well, to the best of my recollection, it was two or three days after I had got sentenced. I was in Clinton County jail in the Southern District of Illinois. I called his office. We talked for a few minutes. And I advised him to file an appeal for me, and I thought I had it filed.
>                                                             . . .
> *Court:* Was anyone around who may have heard you make this request?
> *Brown:* No because don't have nobody in my business like that. I called on the phone that they use the pay card with.
> *Court:* Okay. And what did you say to Mr. Cronin at that time?
> *Brown:* Well, he talked to me about some things as far as—as far as the sentencing goes. And he advised me that I could appeal, you know, he thought that I should appeal, and he explained some things to me about appealing and I advised him that I would like to appeal.
> *Court:* Okay. And why did you want to file an appeal?
> *Brown:* Because I feel—I kind of feel like I got an excessive amount of time.
>                                                             . . .
> *Court:* Well, how did Mr. Cronin respond when you told him during this phone call you wanted to file an appeal?
> *Brown:* As I say, it's been a long time but I recall—I think I recall him saying that he would.

---

the court to expand the record without request by ordering the parties to submit materials, including affidavits and answers under oath to written interrogatories propounded by the judge.).

The discussion then turned to the letter from Dan Cronin dated October 31, 2012, which Mr. Brown indicated that he did not get "until like sometime later in November . . . [when] it was sent back out to me by [Mr. Cronin] and the public defender's office [on] November 20, 2012."

> *Court:* Well, what did you think when you got that letter from Mr. Cronin, did you think that an appeal had been filed?"
> *Brown:* Yes. The thing is that this letter was sent out before we had a conversation that I had with him. And after the conversation that I had with him, this letter came to me, but it had already been written before we had the conversation that I had with him. . . . [W]hat I'm saying is that this letter that he sent me was sent out to me before I ever—before I—this was sent before the conversation we had, but I never received it until—
> *Court:* Okay. . . . So, that letter from Mr. Cronin talks about the pros and cons of filing an appeal and discusses or, I think, invites you tell him if you want to file a notice of appeal. So when you got that letter did you understand that a notice of appeal had not been filed?
> *Brown*: No. No. Because I was under the impression that the conversation that we had, I had told him that I wanted to appeal. So by this letter being sent to me before we had the conversation, actually I thought it was irrelevant to the conversation we had, because we had the conversation after it was written.

The Court then turned to Brown's assertion that he renewed his request for Mr. Cronin to file a notice of appeal after he received the October 31st letter.

> *Court:* On what date did you make your second request to Mr. Cronin to file a notice of appeal?
> *Brown:* Well, I didn't. Once I found out—I think I called the Court and I found out that I didn't have an appeal pending and that's when I filed my 2255.
> *Court:* Now you say in your affidavit . . . "That I renewed this request upon receiving a October 31, 2012 Memorandum from attorney Cronin regarding the appeal." So are you telling me now that you did not reach out to Mr. Cronin . . . after you got the October 31 letter and make another request?
> *Brown:* No, we didn't have another conversation. What I meant by that is

Page 6 of 14

                   this is when I went into contacting the Court and continued to file the 2255, preparing the 2255 to get it prepared to send into the Court because I found I didn't have an appeal then.
*Court:*    So after you got that letter you did not reach out to Mr. Cronin either by phone or in writing again, correct?
*Brown:*   Yes, that's correct . . . That I recall. I mean, to my recollection I don't recall having another conversation with Mr. Cronin.
*Court*:    You only recall the one on the phone a few days after you were sentenced while you were still in the Clinton County jail?
*Brown:*   As far as I can recall, your Honor, that's the last time I talked to Mr. Cronin.

Because Brown's answers conflicted with the assertions in his affidavit, the Court pressed Brown.

*Court*:    "Now your affidavit also says . . . you got this letter from Mr. Cronin in November [2012]. And then you say in late August [2013] you learned that no appeal had been filed. But now you are telling me that you knew in November that no appeal had been filed, correct?"
*Brown*:   Yes.
                              . . .
*Court*:    But nonetheless, you said after you got that letter you called the Court, correct?
*Brown:*   Exactly.
                              . . .
*Court:*    Do you know when you made that phone call?
*Brown:*   No, ma'am . . . I can't recall.
*Court:*    Do you remember anything about who you spoke to?
*Brown:*   No, ma'am. I knew it was a clerk.
*Court:*    Were you at Elkton when you made that phone call[?]
*Brown:*   No. . . . I was in Atlanta [USP].
*Court:*    And what was the purpose of that phone call?
*Brown:*   To find out did I have an appeal on record.
*Court:*    What did they tell you?
*Brown:*   That I did not.
                              . . .
*Court:*    So what did you do then?
*Brown:*   And then I started to prepare my 2255.

## DISCUSSION

28 U.S.C. § 2255 requires a court to vacate, set aside, or correct the sentence of a prisoner in custody if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006)). Thus, it "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted).

Here, Brown alleged his Sixth Amendment right to counsel was violated when his attorney did not file a notice of appeal despite his instruction to do so. To prevail on a claim of ineffective assistance of counsel, a petitioner is normally required to "meet the familiar two-part standard set forth in *Strickland.*" *McElvaney v. Pollard,* 735 F.3d 528, 532 (7th Cir. 2013) (citing *Strickland v. Washington,* 466 U.S. 668, 688 (1984)). The petitioner must show that his counsel's performance was deficient, "meaning it fell below an 'objective standard of reasonableness'" and his counsel's deficient performance prejudiced him. *McElvaney*, 735 F.3d at 532 (quoting *Strickland*, 466 U.S. at 688). The Seventh Circuit has held, however, that when a defendant claims his lawyer failed to comply with his request to file a direct appeal, the lawyer's failure "is per se ineffective assistance of counsel," and the defendant need not show prejudice in order to prevail on

the ineffectiveness claim. *Gant v. United States,* 627 F.3d 677, 681 (7th Cir. 2010); *Kafo*, 467 F.3d at 1066, n.7. *See also Roe v. Flores–Ortega,* 528 U.S. 470, 484 (2000) ("[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim," and prejudice can be presumed without any "showing from the defendant of the merits of his underlying claims."); *Ryan v. United States*, 657 F.3d 604, 606 (7th Cir. 2011) ("When a defendant in a criminal case specifically instructs a lawyer to file a notice of appeal, the lawyer's failure to do so deprives the defendant of the Sixth Amendment right to counsel, regardless of whether an appeal was likely to succeed."); *Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir. 1994) ("[F]ailure to take an appeal, despite the defendant's request, is ineffective assistance without regard to the probability of success on appeal.")

Here, the first issue the Court must consider is whether an evidentiary hearing is required to resolve Brown's claim. "A district court need not grant an evidentiary hearing in all § 2255 cases." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001); *accord Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002). For example, a hearing is not required when "the files and records of the case conclusively show that the prisoner is entitled to no relief." *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) (quoting 28 U.S.C. § 2255(b)). A hearing is also not necessary if the petitioner's allegations are "palpably incredible" or "inherently unreliable" *Bruce*, 256 F.3d at 597 (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)); *Barker v. United States*, 7 F.3d 629, 636 n.3 (7th Cir. 1993) (quoting *United States v. Trussel,* 961 F.2d 685, 689 (7th Cir. 1992)). A hearing

must be granted, however, if the petitioner "alleges facts that, if proven, would entitle him to relief." *Lafuente*, 617 F.3d at 946. Thus, the salient question for the Court is whether the facts supporting Brown's allegation of ineffective assistance, as set forth in his affidavit and his in-person statements to the Court, constitute sufficient evidence to make his allegation plausible and to warrant further inquiry by the Court. *Ryan*, 657 F.3d at 606; *Lafuente*, 617 F.3d at 946; *Mahaffey v. Ramos*, 588 F.3d 1142, 1144 (7th Cir. 2009); *Kafo*, 467 F.3d at 1067–69.

Here, Brown initially swore that he asked Dan Cronin to file a notice of appeal on two separate occasions. It is now clear, however, that the second request never happened. In his affidavit, Brown stated that he made his second request in November 2012, "upon receiving a[n] October 31, 2012 Memorandum from attorney Cronin" (Doc. 1-1). But after Mr. Cronin disputed Brown's assertion (Doc. 4-2), Brown completely changed his story and admitted under oath that he did not have any conversations with Cronin after he received the letters (Doc. 27).[4] In other words, Brown conceded that he never actually made this second request to Mr. Cronin.

That leaves only Brown's first alleged request. In his affidavit, Brown swore that he made his first request to Mr. Cronin "immediately following sentencing" (Doc. 1-1). This implies to the Court that Brown made an in-person request to Mr. Cronin while he

---

[4] The Court also notes that when Brown was questioned about this inconsistency, his explanation for the inconsistency made little to no sense. *See supra* pp. 6–7.

was still in the courthouse, perhaps still in the courtroom, on the day of his sentencing.[5] But after Mr. Cronin flat-out denied Brown's assertion (Doc. 4-2), Brown shifted his story and stated that he actually made his first request "two or three days" after he was sentenced by calling Mr. Cronin from the Clinton County Jail (Doc. 27).

Brown's sworn statements regarding this first request are not credible on their face given that Brown could not keep his story straight. Notably, this was not the only aspect of Brown's story that changed. As previously mentioned, Brown told two different stories about his purported second request to Cronin. He also told two different stories about when he learned that no appeal had been filed. Brown initially swore that he learned in August 2013 from someone at the prison's law library that an appeal had not been filed (Doc. 1-1). But then Brown swore to the Court that he actually found out that no appeal had been filed after calling the Clerk of Court's office in November 2012 (Doc. 27). Simply put, Brown's statements to the Court with respect to all of the most crucial aspects of his story were completely inconsistent with his initial version of the story.

Brown also failed to offer any explanation for the change in his story regarding his first request to Mr. Cronin or to otherwise justify why he neglected to mention the phone call in his affidavit. After speaking to Brown in person, the Court was left with the impression that Brown realized his initial story did not jibe with the timeline of Mr.

---

[5] Black's Law Dictionary defines "immediate" as "occurring without delay; instant." BLACK'S LAW DICTIONARY (10th ed. 2014). Another frequently cited dictionary defines immediately as "[w]ithout any delay or lapse of time; instantly, directly, straightway; at once." OXFORD ENGLISH DICTIONARY, (2d. ed. 1989).

Cronin's first letter to him,[6] so he attempted to tweak his story to mesh with the evidence. But, unfortunately for Brown, his new story also doesn't mesh with the evidence. If Brown called Mr. Cronin two or three days after his sentencing, as he claims, and asked Cronin to file an appeal, then why didn't Mr. Cronin mention the conversation in his second letter to Brown (the letter dated November 20, 2012)? Common sense dictates that if the conversation did, in fact, take place, it would have been reflected in *some* manner in Cronin's subsequent letter to Brown.[7] But the letter does not even remotely suggest, let alone explicitly mention, that the two men spoke by phone, that Brown instructed Cronin to file an appeal, or that Cronin did so. Simply put, nothing in the letter gives the impression that there was any contact between the two men following the revocation hearing.[8]

In sum, the inconsistencies in Brown's story and its incompatibility with undisputed evidence make his allegation that he instructed Dan Cronin to file a notice of appeal patently unbelievable and inherently unreliable. This finding obviates the need for a full evidentiary hearing or any further investigation by the Court. This finding also means that Brown's petition for relief under § 2255 can be summarily denied. *See Gant v.*

---

[6] If Brown had asked Mr. Cronin to file an appeal immediately following his sentencing, then why did Cronin write a letter later that afternoon outlining the pros and cons of appealing and asking Brown to tell him whether or not to file the notice of appeal? If Brown had already asked Mr. Cronin to appeal, then there was simply no reason for Cronin to write that letter.

[7] For example, Mr. Cronin might have said (1) that the October 30th letter is the one he mentioned during their phone call; (2) that they discussed the contents of the October 30th letter during their previous conversation; (3) that Brown could disregard the October 30th letter because an appeal was filed after their phone conversation; and/or (4) that he was forwarding the October 30th letter so that Brown had a copy for his file.

[8] Not that Dan Cronin didn't attempt to make contact. As previously mentioned, he mailed a letter to Brown on October 31, 2012, but that letter was returned to him as undeliverable.

*United States,* 627 F.3d 677, 681 (7th Cir. 2010) (explaining that for a defendant to succeed on a claim that he asked his attorney to pursue a direct appeal and the attorney did not do so, "a defendant must show that he actually requested his attorney file an appeal."); *Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir. 1994) ("'Request' is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue.").

### CERTIFICATE OF APPEALABILITY

Brown cannot appeal the denial of his § 2255 petition unless this Court or the Court of Appeals issues a certificate of appealability. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "That standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." *Welch v. United States*, 136 S. Ct. 1257, 1263 (2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

For the reasons detailed above, the Court has determined that Brown did not state any grounds for relief under § 2255, and reasonable jurists could not debate that conclusion. Thus, Brown has not made "a substantial showing of the denial of a constitutional right," and a certificate of appealability will not be issued.

## CONCLUSION

James Earl Brown's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**. The Court **DECLINES** to issue a certificate of appealability. This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:   March 9, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**